**UNITED STATES of America, Appellee,**

v.

**Charles Daniel BOURNE, Appellant.**

**No. 83–5167.**

United States Court of Appeals, Fourth Circuit.

Argued May 11, 1984.

Decided June 27, 1984.

Frank A. Mika, Waynesboro, Va., for appellant.

Jennie L. Montgomery, Asst. U.S. Atty., Alexandria, La. (John P. Alderman, U.S. Atty., Roanoke, Va., on brief), for appellee.

Before HALL and MURNAGHAN, Circuit Judges, and NORTHROP, Senior District Judge Sitting By Designation.

PER CURIAM:

This is an appeal from the criminal conviction of Charles Daniel Bourne. Bourne appeals his conviction on four counts of a five-count indictment. Those counts were: Count I—Conspiracy to Manufacture Methamphetamine, a Schedule II Controlled Substance and to Possess that Substance with Intent to Distribute (21 U.S.C. § 846); Count II—Attempting to Manufacture Methamphetamine (21 U.S.C. § 841(a)(1)) (The District Judge granted Bourne's motion for a judgment of acquittal on this attempt count); Count III—Interstate Travel on May 28, 1982 in Furtherance of the Illegal Activity (18 U.S.C. § 1952); Count IV—Interstate Travel on June 8, 1982 in Furtherance of the Illegal Activity (18 U.S.C. § 1952); and Count V—Use of the Telephone to Facilitate Commission of the Crime (21 U.S.C. § 843(b)).

I.

The facts which are relevant to the instant appeal are as follows. The Drug Enforcement Administration, in conjunction with the police authorities of the State of Georgia, advertised in periodicals an illicit laboratory storefront which would sell chemicals to various people to be used in the manufacture of controlled substances. Mr. Bourne became a suspect when an ad in one of the magazines was answered by defendant/appellant Bourne and a co-defendant, John DeHart. Bourne and DeHart went to the storefront seeking to purchase chemicals known to be used in the manufacture of methamphetamine. The testimony at trial revealed that Bourne and DeHart set up a laboratory to manufacture a precursor drug in the attic of Bourne's house. They then were intending to take this drug which was an immediate precursor of methamphetamine to another individual who would produce the desired end product, methamphetamine.

DEA agents observed Bourne and De-Hart travel interstate (from Virginia to Georgia) and purchase substances known to be used in the manufacture of methamphetamine. Also, Bourne and DeHart made telephone calls concerning the availability and price of such substances to an undercover DEA agent. Bourne and De-Hart later apparently felt that either the DEA or the police were following them. Thus, they decided to move the lab from Bourne's attic to DeHart's house. DeHart and his roommate, Geib, drove to get the lab one evening and were stopped and questioned by DEA agents. After questioning the two, the DEA agents obtained a telephone search warrant for the Bourne residence. Said search was executed at approximately 5:00 a.m. on June 10, 1982.

This led to the indictment of Bourne and DeHart. On September 10, 1982, pleas of not guilty were entered by both defendants and a trial date was set for November 10, 1982.

## II.

The primary issue on this appeal is whether the trial judge correctly denied defendants' motion to dismiss based upon the Speedy Trial Act. 18 U.S.C. § 1361 et seq. The relevant portion of the Speedy Trial Act provides:

> In any case in which a plea of not guilty is entered, the trial of a defendant shall commence within *seventy days* from the filing date of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, *whichever date last occurs.*

18 U.S.C. § 3161(c)(1) (Supp.1984) (Emphasis supplied).

The relevant facts concerning the speedy trial issue are as follows: In October of 1982, Bourne retained new counsel and a continuance of the trial was sought. A Waiver of Speedy Trial Rights was executed by Bourne; and Judge Turk entered an Order extending the speedy trial time to January 18, 1983.

On December 20, 1982, Bourne and De-Hart filed several pretrial motions. Hearings were held on December 21 and 22, 1982. Bourne, however, wished to present further testimony on the motions; consequently, the trial date was rescheduled for February 23, 1983 and the hearing was to be completed on the previously set trial date of January 18, 1983. The hearing was not actually completed until January 25, 1983. An order denying the motions was entered by the Court on February 9, 1983. This second continuance, from January 18, 1983 to February 9, 1983, involves clearly excludable time:

> The following periods of delay [resulting from any pretrial motion] shall be excluded in computing the time within which ... the trial of any offense must commence: ... from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion.

18 U.S.C. § 3161(h)(1)(F) (Supp.1984).

As noted above, there was a Waiver of Speedy Trial Rights executed by defendant and a subsequent continuance granted on November 8, 1982 which continued the trial through January 18, 1983. Speedy trial time began to run on September 10, 1982, the date of the arraignment. From September 10 to November 8, 1982, fifty eight (58) non-excludable days expired. The period from November 8, 1982, to January 18, 1983 constituted excludable time. Then, the automatic exclusion for pretrial motions extended the time up to February 9, the date upon which the order denying the pretrial motions was entered. Thus, as of February 9, 1983, fifty-eight (58) non-excludable days had expired, and speedy trial time again began to run on February 9, 1983.

On February 18, 1983, government counsel apparently learned that a witness which the government intended to call at trial, would be unable to testify on the scheduled trial date of February 23, 1983 because of medical problems. February 18, 1983, was the Friday before a three-day holiday weekend with the trial date set for the following

Wednesday. Government counsel contacted the trial judge directly and met with him at 5:00 p.m. and obtained an *ex parte* continuance of the trial. In early March of 1983, the trial court notified counsel that the trial would commence on April 27, 1983. Prior to that date defendant filed a motion to dismiss based upon the Speedy Trial Act which, after argument, was denied. The trial was held on April 27, 1983. After the trial, while the jury was deliberating, the government put on additional testimony concerning the "essential" witness.

For the purposes of the Speedy Trial Act, nine (9) non-excludable days had passed between February 9 and February 18, 1983. On February 18, the continuance concerning the essential witness was granted; the trial date was set and sixty-seven (67) non-excludable days had passed. Thus, if the final continuance was proper, the Speedy Trial Act was not violated. Appellant vehemently objects to the validity of the final continuance because he contends that the government witness was not essential. Appellant also contends that the continuance was improper because it was obtained *ex parte*.

 When a continuance is sought to secure the attendance of a witness, the following elements must be proved by the party requesting the continuance: who the witness is, what his testimony will be, that it will be relevant to the issues in the case and competent, that the witness can probably be obtained if the continuance is granted, and that due diligence has been used to obtain his attendance for the trial as set. *United States v. Clinger,* 681 F.2d 221, 223 (4th Cir.1982).

As the transcript of the hearing on the motion to dismiss indicates, Judge Turk stated that he was informed by the government that the witness, Special Agent Starling, was essential but was ill and would be unable to testify on the date set because he had recently been hospitalized for back surgery and was under doctor's orders not to travel. Appellant's counsel, however, indicates that Agent Starling had returned to work as early as March 21. Appellant ar-

gues that the trial date should have been moved to an earlier date once Agent Starling was released from the hospital. However, we find that Judge Turk set a trial date which allowed a time period commensurate with the time necessary for Agent Starling to recover from his disability. It is apparent that Judge Turk was informed about the nature of Agent Starling's medical disability and was further informed that the witness would be available to testify after a period of approximately four weeks. Moreover, it is unlikely that the trial could have been held at any time substantially earlier than April 27, 1983, since there was a question whether Starling was capable of travelling as soon as he was released from the hospital.

Appellant further argues that despite the fact of Starling's medical infirmity, he was not an essential witness because his testimony would only consist of matters which were tape recorded. Appellant indicates that the tapes could have been introduced instead of the live testimony. However, the government indicates that his testimony was necessary because he was the only witness able to testify directly about the activities involved in Count IV, namely, Bourne's interstate travel on June 8, 1982 and his subsequent conversations and chemical purchases at the storefront. In addition, Agent Starling would testify in rebuttal to defendant's argument concerning overreaching governmental activity.

 Under these circumstances, it seems clear that the *Clinger* elements have been met. Starling's testimony was certainly relevant and he was clearly unavailable at the time, but *would* be available at a later time. It should be noted that the *Clinger* case *does not* hold that the government *must* find an alternative means of evidence or testimony which could be presented instead of the unavailable witness. The only requirement is that the government be *diligent* in *trying* to obtain the witness for trial. This requirement is met here. Thus, all requirements of the *Clinger* case have been met. The trial judge found that the witness was essential

and in his discretion found that the trial should not proceed without that witness. Under these circumstances, we find that the final continuance was proper and did not constitute a violation of the Speedy Trial Act. 18 U.S.C. § 3161 (Supp.1984). We also find that § 3161(h)(3)(A) of the Act does not require that the trial judge make specific findings that the ends of justice require the continuance as argued by the appellant.

■ Appellant further contests the *ex parte* nature of the motion for continuance. Appellant argues that counsel should have at least been notified of the government's motion so that appellant could object and dispute the reasons for the continuance proffered by the government. The government argues that it was not aware of the situation until just before the holiday weekend. Counsel for the defendant was notified on the holiday, Monday, February 21, 1983, that the trial was continued and would not commence on Wednesday, the 23d. It is not clear why defense counsel was not notified on Friday that a continuance would be requested. However, Judge Turk was convinced that an essential witness would be unavailable and he granted a continuance. We do not find that this was reversible error simply because defense counsel could not object and try to argue that the witness was not essential. Moreover, a hearing *was* later held and defense counsel was given a full opportunity to present reasons why he felt that the continuance was improper.

■ Granting or denying a continuance under the Speedy Trial Act is a matter committed to the trial judge's sound discretion. *United States v. Black,* 684 F.2d 481 (7th Cir.1982), *cert. denied,* 459 U.S. 1043, 103 S.Ct. 463, 74 L.Ed.2d 613 (1983). The Act should be read to give the trial court some flexibility in setting a reasonable trial date after a continuance has been validly granted pursuant to the Act's requirements. In the instant case, for the above reasons, we find that no abuse of discretion occurred on the part of Judge Turk.

### III.

■ Appellant's next argument challenges the validity of his conviction on Count I, the conspiracy count. Appellant contends that there was insufficient evidence to support a conviction of conspiracy to manufacture methamphetamine because the testimony revealed that the co-defendants only intended to produce phenyl-2-propanol and phenyl-2-propanone, not methamphetamine. As the government points out, co-conspirator DeHart testified that he and Bourne intended to and did attempt to make phenyl-2-propanol and later, phenyl-2-propanone. Both chemicals are immediate precursors of methamphetamine. Moreover, Mr. DeHart further testified: "Mr. Bourne told me on one occasion that he was taking it [the phenyl-2-propanone] to another person, *from which this individual would produce the methamphetamine* and Mr. Bourne would either receive a portion of the methamphetamine produced or money for supplying him with the chemicals." Appendix at p. 340. This testimony, together with the overall testimony and inferences which can be drawn therefrom constitutes sufficient evidence to support a finding, beyond a reasonable doubt, that one purpose of the conspiracy was to eventually manufacture and distribute methamphetamine.

As to Counts III and IV involving interstate travel, appellant contends that these counts should be dismissed because there was a judgment of acquittal as to one essential element of the interstate travel offenses. That is, since a judgment of acquittal was entered as to the attempt to manufacture methamphetamine, appellant contends that this precludes any finding that interstate travel was used in furtherance of that offense.

■ It is true under the Travel Act, that the offense is such that, by definition, proof of illegal acts occurring after the interstate travel *must be shown. United States v. Jones,* 642 F.2d 909 (5th Cir.1981). *See also United States v. LeFaivre,* 507 F.2d 1288, 1291 (4th Cir.1974), *cert. denied,*

420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 762 (1975). In the instant case, unlawful acts did later occur. Specifically, the appellant and DeHart conspired to manufacture a controlled substance, to wit, methamphetamine. Also, appellant was involved in manufacturing the precursor drugs, phenyl-2-propanol and phenyl-2-propanone. These acts occurred after the interstate travel occurred. Therefore, the convictions on the Travel Act counts are valid.

Similarly, Count V involving use of the telephone in furtherance of illegalities is also valid since the evidence showed that the telephone was used to facilitate the conspiracy to manufacture methamphetamine. In other words, the conspiracy itself, of which appellant *was* convicted, is the underlying offense which gives rise to the illegal interstate travel and the illegal use of the telephone.

### IV.

Appellant's next argument concerns tape recorded conversations of Special Agents Wilkinson and Starling with Bourne and DeHart. Bourne argues that the agents should not have been permitted to testify about the conversations because the tape recordings constitute the "best evidence" of those conversations. We disagree. One's testimony as to what was said in a conversation in which that person participated is at least as good as a tape recording of that conversation. Bourne could have used the tapes for impeachment of the agents' testimony on cross examination if he so desired. No error is found in connection with the tapes.

### V.

Appellant gives his next three arguments very little attention, and so will we. The appellant argues that the stopping and questioning of Messrs. DeHart and Geib was illegal. Bourne has no standing to assert violations of the constitutional rights of DeHart and Geib. *See, e.g., United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). Thus, there is no merit to this contention.

Appellant next contends that the trial court should have given his jury instructions on both entrapment and "overreaching governmental participation and creative activity." The entrapment instruction *was* given by the trial court, but the latter instruction was not.

As the government points out, Bourne did not produce evidence in furtherance of his contention that the government was overreaching or was too creative. Since he produced no evidence on this, it was not error for the trial court to refuse to give an instruction on the issue. *United States v. Hammons,* 566 F.2d 1301 (5th Cir.1978), *vacated on other grounds,* 439 U.S. 810, 99 S.Ct. 68, 58 L.Ed.2d 102 (1978). The instruction on entrapment was sufficient under the circumstances.

And, finally, appellant contends that the trial court erred in refusing to provide counsel for the defendant a copy of the statement made by John DeHart to the probation office as Jencks material. Presentence reports in the possession of the Court's Probation Department are not "in the possession of the United States" for Jencks Act purposes. *United States v. Trevino,* 556 F.2d 1265, 1271 (5th Cir.1977).

### VI.

For the reasons stated above, we affirm the conviction of appellant Bourne on Counts I, III, IV, and V.

AFFIRMED.