968 F.2d 1213
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of AMERICA, Plaintiff-Appellee,
v.
Scott Lewis RENDELMAN, Defendant-Appellant.
 No. 91-5671.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 5, 1992
Decided: July 23, 1992
 
 Argued: David Francis Mister, Ruppersberger, Clark & Mister, Timonium, Maryland, for Appellant.
 Christopher Bowmar Mead, Assistant United States Attorney, Baltimore, Maryland, for Appellee.
 On Brief: David F. Mister, Ruppersberger, Clark & Mister, for Appellant.
 Christopher Bowmar Mead, Assistant United States Attorney, and Richard Douglas Bennett, Assistant United States Attorney, for Appellee.
 Before RUSSELL and WILKINSON, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 OPINION
 
 1
 Scott Lewis Rendelman appeals on numerous grounds his conviction of two counts of mailing threatening letters to federal judges in violation of 18 U.S.C. § 876 (1988). He seeks reversal by this Court on the alternative grounds that (1) the delay in trying his case violated the Speedy Trial Act, 18 U.S.C. § 3161(c)(1) (1988); (2) the delay in trying his case violated the Sixth Amendment guaranty of a speedy trial; (3) the court's order continuing trial, which order was made without Rendelman present at the hearing, denied him due process; (4) the court's refusal to allow additional time to prepare for trial denied him a fair trial; (5) the court's failure to provide him street clothes denied him a fair trial; (6) the court's refusal to dismiss the jury panel after making a prejudicial remark denied him a fair trial; and (7) the evidence was insufficient to support the jury's verdict. Finding no merit to any of Appellant's contentions, we affirm the conviction.
 
 I.
 
 2
 In 1988, Rendelman was convicted by a federal jury of seven counts of mailing threatening letters in violation of 18 U.S.C. § 876. Rendelman had mailed obscene, threatening letters to individuals involved in a prior Maryland state theft trial, including the man who pressed charges against Rendelman, the prosecuting attorney, and the appellate court judges. Rendelman received sentences of five years imprisonment for each count, the sentences to run concurrently, with immediate eligibility for parole.
 
 
 3
 Punishment proved no deterrence to Rendelman. Around the time of sentencing, Rendelman wrote additional threatening letters, this time to Judge Ramsey, the presiding judge at his trial and sentencing for the § 876 violation. One letter, which is the basis for his conviction appealed here, threatened, in extremely vile language, acts of mutilation and murder against Judge Ramsey and his family. Rendelman bolstered his threats with the language:
 
 
 4
 Forget what I said in the courtroom;[1] I mean this. There's only so much a man can take, and I've been forced beyond my limit.
 
 
 5
 (App. at 13.)
 
 
 6
 In January 1990, federal Judge Herbert Murray denied Rendelman's post-conviction motion for reduction of sentence in connection with his § 876 conviction. Shortly thereafter, Rendelman sent Judge Murray a letter similar to the one sent to Judge Ramsey.
 
 
 7
 Based on the letters, a federal grand jury indicted Rendelman on two counts of threatening to murder a United States judge in violation of 18 U.S.C. § 115 and three counts of mailing threatening letters in violation of 18 U.S.C. § 876. The government dropped the murder counts and one of the mailing counts prior to trial. In a pretrial conference, counsel for each side agreed to a continuance in order that Rendelman might undergo psychiatric examinations to determine his competence to stand trial. The court granted the government's motion to exclude the continuance time under the Speedy Trial Act pursuant to 18 U.S.C. § 3161(h)(8)(A), (B)(iv).
 
 
 8
 Trial began on April 29, 1991, over a year after Rendelman had been arraigned. Rendelman testified at trial that he wrote the letters merely to protest the criminal justice system and its failures in his case. He stated that he never intended to carry out the threatened actions. He further stated that those who received the letters should have known, based on his history of nonviolence and the positive psychiatric reports in his record, that his violent threats would never be carried out. Nevertheless, the jury convicted on both counts.
 
 
 9
 Rendelman now appeals.
 
 II.
 
 10
 We discuss each of Rendelman's claims separately below. Because we find no merit in any claim, our disposition of each warrants only a brief discussion.
 
 
 11
 (1) Speedy Trial Act. Rendelman first claims that the time between his arraignment on April 25, 1990, and his trial approximately one year later on April 29, 1991, exceeded the statutory 70-day period within which trial must commence under the Speedy Trial Act, 18 U.S.C. § 3161(c)(1) (1988). Section 3161(c)(1) requires in pertinent part that trial commence within 70 days "from the date the defendant has [last] appeared before a judicial officer of the court in which such charge is pending." In computing the time within which trial must commence, the statute excludes, inter alia, periods of time during which the defendant is undergoing psychiatric examinations to determine competency to stand trial (§ 3161(h)(1)(A)); is involved in a trial on other charges (§ 3161(h)(1)(D)); has pretrial motions pending (§ 3161(h)(1)(F)); is being moved from one correctional facility to another (§ 3161(h)(1)(H)); or has a trial continued by order of the judge (§ 3161(h)(8)(A)).
 
 
 12
 In Rendelman's case, several periods of time qualify for statutory exclusion. We need only consider one for disposition of this claim. Rendelman had defense motions outstanding from May 7, 1990, (12 days after his arraignment) until April 24, 1991 (5 days before trial). Thus, almost the entire period of delay would be excluded from the 70-day calculation under § 3161(h)(1)(F). The Supreme Court has ruled that the pretrial motion exclusion is absolute, without qualification for reasonableness in the delay. See Henderson v. United States, 476 U.S. 321, 326-27 (1986); United States v. Velasquez, 802 F.2d 104, 105 (4th Cir. 1986).[2] (2) Sixth Amendment. Rendelman next asserts a speedy trial claim under the Sixth Amendment. He argues that the delay prejudiced his case because reactions to the letters by government witnesses could have changed over time (a recipient's reaction is admissible to determine whether the sender intended the letter to threaten its recipient).
 
 
 13
 Courts should consider and balance four factors in evaluating constitutional speedy trial claims: "ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Barker v. Wingo, 407 U.S. 514, 530 (1972); see United States v. Quinteros, 769 F.2d 968, 974 (4th Cir. 1985).
 
 
 14
 While the length of delay in this case causes concern, see Barker, 407 U.S. at 530-31 (courts should be less tolerant of delay in a simple case), consideration of the other Wingo factors convince us that the delay did not violate the Sixth Amendment. Rendelman's trial was twice delayed for cause, that is, delayed four months for psychiatric evaluations and then three months for a separate, unrelated prosecution in Tennessee. Rendelman never objected to the delay until the morning of trial, although no obstacles prevented him from raising this claim earlier. Moreover, we reject Rendelman's assertion of prejudice. The delay, if anything, would have acted in Rendelman's favor by allaying the initial fear a recipient might feel upon reading these letters.
 
 
 15
 (3) Due process. Rendelman next claims that he was denied due process when the court continued his case, excluding the continuance time from the Speedy Trial Act limitations, without affording Rendelman an opportunity to be heard. Rendelman's appointed counsel attended the hearing, but Rendelman himself was neither notified nor allowed to participate. Rendelman acted pro se in this case, with stand-by counsel appointed to assist him.
 
 
 16
 This claim fails because Rendelman was not denied a guaranteed process, nor was he deprived of a fair hearing on the continuance issue. See Miller v. State of North Carolina, 583 F.2d 701, 706 (4th Cir. 1978) ("Due process is not violated unless the error constitutes a 'failure to observe that fundamental fairness essential to the very concept of justice.' " (citations omitted)). We note initially that the statute under which the court acted, 18 U.S.C. § 3161(h)(8)(A), does not require a judge to hear both sides before granting a continuance. See United States v. Bourne, 743 F.2d 1026, 1031 (4th Cir. 1984) (holding that ex parte hearing on motion for continuance under § 3161(h) does not per se constitute reversible error). Yet the district court permitted counsel for both sides to participate in the hearing. The subject of the pre trial hearing was Rendelman's competency to stand trial and the need for a continuance in order to conduct a psychiatric evaluation. In this type of proceeding, where questions of competency are involved, a defendant's interests are best protected through representation by counsel. Rendelman offers no evidence of his counsel's deficient performance on his behalf.
 
 
 17
 (4) Inadequate time for trial preparation. Rendelman's next claim is somewhat at odds with his speedy trial claims. On the first day of trial, Rendelman made a motion, denied by the court, to delay trial two weeks so that he would have adequate time to prepare his defense. Rendelman had returned to the correctional institute in Baltimore, following a trial in Tennessee on unrelated charges, only six days before trial in this case.
 
 
 18
 The trial judge, in denying Rendelman's motion, found that Rendelman had had a year to prepare for this fairly simple trial and that Rendelman knew as of January 3, over three months before trial, that trial had been set for April 25. Furthermore, Rendelman never sought relief prior to trial. He raised the request initially on the first day of trial. Based on these findings, the trial judge did not abuse his discretion in denying Rendelman's motion. In addition, Rendelman has not demonstrated prejudice resulting from this denial. See United States v. LaRouche, 896 F.2d 815, 823 (4th Cir.) (defendant must demonstrate that district court abused its discretion in denying continuance, and that the denial prejudiced defendant's case), cert. denied, 496 U.S. 927 (1990).
 
 
 19
 (5) Prison clothing. Rendelman also challenges the court's failure to provide him with street clothes for trial. See Estelle v. Williams, 425 U.S. 501 (1976) (compelling defendant to stand trial in prison attire violates due process). However, Rendelman's claim fails because he did not meet the prerequisite showings necessary for an Estelle claim. A defendant must show both that he was compelled to wear prison attire and that he did not fail to object. 425 U.S. at 512.
 
 
 20
 Here, the court did not compel Rendelman to wear his prison uniform; it merely refused to delay trial in order to procure street clothes for him.[3] Rendelman waited until trial began to ask for street clothes, even though he had been on notice that his would be a jury trial. The judge ordered a brief delay in order to search the courtroom for suitable clothes, but then refused to delay trial and keep the jury waiting any longer when none were found. Moreover, even if the judge's decision was in error, it appears harmless since the jury otherwise was given evidence of Rendelman's incarceration. See Estelle, 425 U.S. at 507 (indicating trial of defendant in prison garb harmless error when offense was committed while in confinement and jury would know of incarceration in any event).
 
 
 21
 (6) Judicial comment. Rendelman next claims denial of a fair trial because of a prejudicial comment made by the trial judge to the jury. At the beginning of voir dire, the judge inadvertently told the jury panel that defendant was charged with threatening to murder a federal judge. These charges had been dismissed by the government prior to trial. The judge immediately corrected himself, and later reiterated to the panel that the indictment charged only mailing threatening communications.
 
 
 22
 In order to successfully challenge prejudicial comments made by a judge, a defendant must show that the trial judge's actions reached a level of prejudice that denied a party a fair trial. United States v. Parodi, 703 F.2d 768 (4th Cir. 1983). We are convinced that the judge's misstatement in this case did not reach such a level because of the relative insignificance of his comment. The erroneous comment was made early in the trial, in a single statement, immediately recanted. Furthermore, in the context of the trial as a whole, the explicit threats of murder contained in Rendelman's letters probably made more of an impression on the jury in this regard than the single comment of the judge.
 
 
 23
 (7) Sufficiency of evidence. Rendelman finally challenges the sufficiency of the evidence to support his conviction. Rendelman asserts that he merely intended his letters to be invectives exposing the injustice and ineffectiveness of the criminal justice system, and not threats to their recipients. He contends that Judge Ramsey and Judge Murray should have recognized the nature of his communications because of the hyperbolic language contained therein and because of psychiatric reports in Rendelman's case file confirming his nonviolent nature.
 
 
 24
 We have previously held that intent to threaten the recipients of a communication is a necessary element for conviction under § 876.[4] United States v. Maxton, 940 F.2d 103, 106 (4th Cir.), cert. denied, 112 S. Ct. 398 (1991). "[I]ntent can be gleaned from the very nature of the words used in the communication; extrinsic evidence to prove an intent to threaten should only be necessary when the threatening nature of the communication is ambiguous." Id. There is no requirement that the government prove a defendant actually intended to carry out his threats. United States v. Chatman, 584 F.2d 1358, 1360-61 (4th Cir. 1978).
 
 
 25
 The evidence here, viewed in the light most favorable to the government, is sufficient to support a rational jury finding of intent. See Jackson v. Virginia, 443 U.S. 307, 319 (1979). We need not go beyond the language of the letters for support. The letters themselves contained very graphic, unambiguous threats to injure and kill the recipient judges and their families. The letter to Judge Ramsey also clearly stated that Rendelman meant what he said in the letter. Beyond the clear threats of the letters themselves, Rendelman testified at trial that he intended the letters to provoke"mental anguish" in the recipients. (App. at 192-93.)
 
 
 26
 In summary, we find that Rendelman's claims, neither individually nor cumulatively, give this Court reason to overturn his conviction below.
 
 AFFIRMED
 
 
 [1]
 This refers to Rendelman's statements at trial. Rendelman told Judge Ramsey that his letters were written merely to protest the injustices of his conviction and sentence and that he never intended to carry out the actions threatened
 
 
 [2]
 In addition to the above exclusion, the period from May 22, 1990, to mid-September, 1990, is excluded under § 3161(h)(1)(A) for court-ordered psychiatric examinations; the period from January 28, 1991, to April 8, 1991, is excluded under § 3161(h)(1)(D) for a trial in the Western District of Tennessee on other charges; and the period from April 8, 1991, to April 23, 1991, is excluded under § 3161(h)(1)(H) for transportation of Rendelman from Tennessee to Maryland. While excluding only these three time periods would leave more than 70 days, the district court did not need to rely on them for its ruling
 Furthermore, the district court, by written order, excluded all time from May 18, 1990, until trial from computation under the Speedy Trial Act, pursuant to exclusion § 3161(h)(8)(A) (continuance exclusion), in order to "permit counsel for the parties adequate time to prepare for trial." This order was agreed to by both government and defense counsel so that Rendelman could undergo psychiatric examination. In ordering an exclusion under § 3161(h)(8)(A), a district court must "set[ ] forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A). We need not review the district court's order for statutory compliance since we dispose of Rendelman's claim otherwise, and decline to do so.
 
 
 FN3
 In reply to Rendelman's request for street clothes, Judge Garbis stated:
 Well, Mr. Rendelman, you are not a fellow who lacks intelligence. Why didn't you say this earlier? You knew if we went through the whole question of how things would appear before a jury, exactly how [appointed counsel] was going to be presented et cetera, I think this sounds like you are playing a game.
 (App. at 72.)
 
 
 [4]
 Section 876 provides in pertinent part:
 Whoever knowingly so deposits or causes to be delivered ... any communication ... containing any threat to kidnap any person or any threat to injure the person of the addressee or of another, shall be fined not more than $1,000 or imprisoned not more than five years, or both.