599 So.2d 559 (1992)
Mary Elizabeth BARRETT and Clifford Barrett
v.
Tom MILLER, C.M. Vincent, Jr., Chris Robinson, David Franklin, Joel Walters and the Continental Insurance Company, a Corporation.
No. 07-CA-59559.
Supreme Court of Mississippi.
April 22, 1992.
*561 Laurel G. Weir, Thomas L. Booker, Jr., Weir & Booker, Philadelphia, for appellants.
William E. Ready, Ready & Associates, Meridian, for appellees.
Before DAN M. LEE, P.J., and SULLIVAN and PITTMAN, JJ.
SULLIVAN, Justice, for the Court:
Mary Elizabeth and Clifford Barrett sued Lauderdale County Sheriff Tom Miller, Deputies C.M. Vincent, Jr., Chris Robinson, David Franklin, Joel Walters, and their surety, The Continental Insurance Company. The Barretts alleged that the deputies, acting under the authorization of Sheriff Miller, illegally searched their home, violating their rights under the Fourth and Fourteenth Amendments of the United States Constitution, and performed the search in an unreasonable manner which damaged their home. They demanded judgment in the sum of $2,000,000.00 for actual damages and $1,000,000.00 in punitive damages.
The defendants answered separately and included a motion to dismiss and a motion for summary judgment. The Barretts responded with their own affidavits, and the trial judge granted both motions as to all defendants.
The Barretts appeal and assign as error:
That the Honorable Lower Court erred in granting summary judgment for defendants and dismissing their case.
Within this main issue the Barretts challenge the following findings of the trial court:
1. Did the trial court err in considering the case under 42 U.S.C. § 1983 and state law when no such contention was made by the Barretts in their pleadings?
2. Whether the search warrant was valid, even though it did not have a copy of the affidavit attached to it and did not list the name of Mary Elizabeth Barrett.
3. Whether Sheriff Miller was liable for the actions of the deputies under respondeat superior and vicarious liability.
4. Whether the defendants were protected by official and good faith immunity.

I. THE FACTS
The Barretts alleged that Sheriff Miller and his deputies came upon their property to execute a search warrant for a green military style ammunition box, .380 caliber fully automatic machine gun and/or a machine pistol, a silencer, .380 caliber automatic ammunition and other automatic weapons. All the officers found were two (2) packs of surgical gloves. According to the complaint, during the course of the search the officers allegedly damaged, confiscated or destroyed the property of the Barretts. The complaint lists damages to the scuttle hole in the loft; insulation from the loft; bed, clothes and personal items; eyeglasses; television set; antique money; couch, sewing machine, chest of drawers; and a waterwell.
In Count One, the Barretts alleged that the search was illegal because the warrant was not accompanied by a proper sworn affidavit containing the underlying facts and circumstances for the warrant and that the search and seizure was illegal and unreasonable under the warrant as it violated their constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution. They alleged that the search caused them to suffer untold embarrassment, emotional distress, mental anxiety, and ridicule in the community.
In Count Two, the Barretts alleged that along with damaged, destroyed, or confiscated property, they have lost income and have incurred medical expense as a result of the search.
Sheriff Miller alleged that he was protected by immunity as an official under state law; that the Barretts failed to state a claim supported by existing jurisprudence, *562 as affidavits were not required to be attached to the copy of the search warrant to be served; the complaint failed to state facts that constituted violations under the Constitution and laws of the United States; there were no allegations of any violations of procedure or any system wide custom of misconduct. Sheriff Miller claimed the complaint failed to state facts that connect him to the search and that under 42 U.S.C. § 1983 there is no vicarious liability or respondeat superior liability. The Sheriff further contended that the complaint contained conclusions and inferences in place of required factual pleadings. In his motion for summary judgment the Sheriff stated that he did not participate in the search of the house and that there were no allegations of any wrong doing on his part.
Sheriff Miller further stated that he did not personally participate in obtaining the search warrant and that he was not negligent in hiring the deputies and he had no notice or knowledge that any of his deputies had a history or propensity of violating any citizen's rights or of being abusive or violent to persons or property.
Two of the deputies not mentioned in the suit were Chuck Fowler and Everett Moseley. They filed identically worded affidavits claiming that the search warrant was obtained by David Franklin and Joel Walters. Franklin, Walters and Sheriff Miller did not participate in the search of the Barretts' home. Deputy C.M. Vincent served the search warrant on the Barretts and the warrant did not have an affidavit of underlying facts and circumstances attached. Fowler and Moseley, along with Chris Robinson and C.M. Vincent, searched the house. They did not find the items they were looking for, but did confiscate two packs of surgical gloves. These deputies stated that the search was done in good faith and according to the practices of their education and training. They did not cause or witness any uncivil behavior toward the Barretts during the search; nor was the search conducted in such manner as to attract attention to the Barretts or their property.
The deputies asserted that they too were clothed with immunity; the Barretts claim that the search warrant was invalid and was not supported by existing jurisprudence; the complaint failed to state facts which rise to the level of violations of the Constitution or the laws of the United States; no damages are allowed for abstract constitutional violations; the pleadings contained conclusions and inferences instead of factual pleadings; they did not in any way damage the property or violate the rights of the Barretts; and there were no sufficient allegations of any illegal or wrongful conduct by them. Deputies David Franklin and Joel Walters stated that there was a lack of connection between them and the alleged injuries to the Barretts.
The affidavits of Deputies Vincent and Robinson stated the same information that Moseley and Fowler stated. Deputies Franklin and Walters stated that they did obtain the warrant by completing an affidavit and appearing and testifying before an independent judge who signed and issued the warrant. Franklin and Walters did not participate in the search.
Continental Insurance also filed motions to dismiss and for summary judgment. Their motion to dismiss repeated the allegations of Sheriff Miller and his deputies. The motion for summary judgment stated that if they were not liable then the company was not liable.
The Barretts denied the allegations asserted in the motions and filed counter-affidavits. One such affidavit was from Shirley and Robert L. Price who stated that they came to the Barrett home immediately after the search and observed the scuttle hole in the loft not completely closed and insulation from the loft which had flown over most portions of the inside part of the house. Clothes and personal items were dumped on the bed. Suitcases had been opened and the contents scattered. The bed was torn up and left in disarray. Part of the television set had been separated from other parts. The couch was disarranged. The drawers of a chest were open with the contents scattered on the floor. *563 The drawers of the sewing machine were left pulled out with the contents on the floor. Mrs. Barrett was looking for her eyeglasses, which were later found broken. The Barretts had complained to the Prices of how the officers had treated them during the search.
The affidavit of Mary Newsome was offered in opposition to the motion for summary judgment. Newsome stated that she was at the Barretts' home when the search was conducted. Her affidavit was much the same as that of the Prices. Newsome adds that the waterwell was damaged, and that one of the deputies shoved her grandmother, and her mother and father suffered the damage and emotional injury mentioned in the complaint.
The trial judge made a determination that this case had to be treated as a civil rights case under 42 U.S.C. § 1983 and state law. The trial judge then granted the motions to dismiss and for summary judgment as to Sheriff Miller because there is no vicarious liability or respondeat superior liability applicable in civil rights cases. The trial judge also found that Sheriff Miller was entitled to claim official immunity and good faith immunity.
The trial judge then granted the motion of Continental Insurance Company to dismiss on the basis that the complaint did not state a claim of action upon which relief could be granted. The motions to dismiss and for summary judgment were granted to David Franklin and Joel Walters as it was clear from the pleadings that these two men did not go to or participate in the search. The trial judge found that the search warrant was legal and valid. The trial judge further found that Franklin and Walters were also entitled to official immunity and good faith immunity. Finally, the trial judge granted the motions of C.M. Vincent, Jr. and Chris Robinson, the two deputies who conducted the search, on the grounds that the Barretts failed to allege facts that established that the search by the deputies lacked good faith or violated clearly established law. The trial judge also found that these two deputies were entitled to official immunity and good faith immunity.
As all of the defendants had been dismissed the trial judge then dismissed the case with prejudice.

II. THE SUBISSUES

A.

IS THIS A 42 U.S.C. § 1983 ACTION?
The trial judge in this case applied § 1983 principles to determine whether the Barretts' claim of excessive-force was actionable. The Barretts contend that they filed a straight suit under state tort law and raised no allegations of a constitutional violation of civil rights under either state law or 42 U.S.C. § 1983.
42 U.S.C. § 1983 provides:
Every person who under color of any statute, ordinance, regulation, custom, usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia
The two essential elements of a § 1983 claim are: (1) the conduct complained of was committed by a person acting under the color of state law; and (2) this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1980).
The focus of § 1983 is on the misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law. Johnston v. Lucas, 786 F.2d 1254, 1257 (5th Cir.1986); Rankin v. City of Wichita Falls, Texas, 762 F.2d 444, 448 *564 (5th Cir.1985). Section 1983 imposes liability for the violation of rights protected by the Constitution, not for violations of duties of care arising out of tort law. Remedy for a violation of a duty of care must be sought in state court under traditional tort law principles. Baker v. McCollan, 443 U.S. 137, 146, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979).
The courts of this state have the authority to hear and adjudge a claim under § 1983. Starnes v. City of Vardaman, 580 So.2d 733, 737 (Miss. 1991); City of Mound Bayou v. Johnson, 562 So.2d 1212 (Miss. 1990); Marx v. Truck Renting & Leasing Ass'n, 520 So.2d 1333, 1346 (Miss. 1987). The authority to hear and adjudge a claim under § 1983 is available, even though the statute is not specifically cited by name in the complaint. Hood v. Department of Wildlife Conservation, 571 So.2d 263, 267 (Miss. 1990); McFadden v. State, 542 So.2d 871 (Miss. 1989). Courts of this state have a duty and an obligation to enforce federally created rights. Burrell v. Mississippi Tax Commission, 536 So.2d 848, 863 (Miss. 1988).
The complaint alleges that the deputies were the agents of Sheriff Miller of Lauderdale County, Mississippi. They acted in the scope of their authority as deputies and in furtherance of the business of Sheriff Miller. The deputies came upon the property pursuant to a search warrant, but the search warrant was invalid making the search and seizure illegal, unreasonable and violative of the Fourth and Fourteenth Amendment rights of the Barretts.
This portion of the complaint clearly alleged actions by persons acting under the color of state law and that such actions deprived the Barretts of their rights secured by the Fourth Amendment of the United States Constitution. The elements of a § 1983 action are present, but were there any allegations of a misuse of power to make § 1983 applicable? The Barretts alleged that the search of their home was conducted in such a manner as to cause damage to their property and cause them to suffer emotional distress. The complaint, though it does not specifically mention § 1983, has § 1983 written all over it. But does this make it a § 1983 action?
Section 1983 provides remedies for constitutional violations and not ordinary torts. Just because a government official is alleged to have committed a tortious act that violated the constitution does not make it a constitutional tort. Daniels v. Williams, 474 U.S. 327, 333, 106 S.Ct. 662, 666, 88 L.Ed.2d 662 (1986). The actions complained of must be of such a nature to raise the ordinary tort to the level of a constitutional tort. Love v. King, 784 F.2d 708, 712 (5th Cir.1986).
The Barretts allege that during the search the deputies damaged their property due to their grossly negligent and intentional actions. In considering whether negligent conduct constitutes a denial of due process, the analysis applied in cases involving alleged use of excessive force is helpful. Hewitt v. City of Truth or Consequences, 758 F.2d 1375, 1379 (10th Cir.1985).
Not all force used by police rises to the level of a constitutional violation. Hewitt, 758 F.2d at 1379. While liability may be assessed under § 1983 when the limits of privileged force are exceeded, the threshold for that liability is higher than that set for a normal tort action. Justice v. Dennis, 834 F.2d 380, 382 (4th Cir.1987). A mere lack of care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment and create liability under § 1983. Daniels v. Williams, 474 U.S. at 330, 106 S.Ct. at 664; See Baker v. McCollan, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).
Several years ago, the United States Supreme Court discussed the mechanics for determining whether an alleged use of force crossed the constitutional line of demarcation:
Today we ... hold that all claims that law enforcement officers have used excessive force  deadly or not  in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" *565 standard, rather than under a "substantive due process" approach.[1] Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.
... .
[Thus, a]s in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.

Graham v. Conner, 490 U.S. 386, 394-97, 109 S.Ct. 1865, 1871-72, 104 L.Ed.2d 443, 454-56 (1989) (emphasis in original and supplied) [citing Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)].
Thus, the Supreme Court explicitly discarded a well-established standard deeply rooted in the theory of substantive due process which federal district and circuit courts had applied with "unreflective" approval.[2] The Court opted for an analysis of the "reasonableness of a particular search or seizure" by declaring "`it is imperative that the facts be judged against an objective standard.'" Graham, 490 U.S. at 397, 109 S.Ct. at 1872, 104 L.Ed.2d at 456 (quoting Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968)).
An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.
Id. (citing cases).
As noted, the trial judge in this case applied § 1983 principles to the evidence and then granted the defendants' motions for summary judgment on various grounds. The judge erred by characterizing this as a § 1983 action. The Barretts filed an excessive-force action seeking a state remedy provided within the ambit of traditional tort law. The Barretts did not allege a constitutional violation of their civil rights; they did not seek a remedy under federal or state constitutional law.
In sum, this Court need not resolve the issue of whether the Barretts' civil rights were violated. This Court need only decide whether the search by the deputies rose to the level of a tort warranting an assessment of damages under state law.

B.

WAS THE SEARCH WARRANT VALID?
The Barretts contend that the search warrant was illegal because it was not accompanied by a proper sworn affidavit containing the underlying facts and circumstances for the search warrant. The Barretts claim there was no sworn affidavit. The Barretts also assert that the property was homestead property owned and controlled by them both, and therefore both of their names had to appear on the warrant.
*566 There is no statute or case law that requires that the affidavit must be attached to the search warrant, so as to make the search warrant invalid if the affidavit is absent.
In regard to the contention that the warrant was void because Mrs. Barrett was not named in it, the Fourth Amendment does not require a search warrant to name the person who is in possession of the premises to be searched. U.S. v. Logan, 744 F. Supp. 735, 741 (N.D.Miss. 1990). Mr. Barrett's name was listed as a means of describing the property. This Court has stated:
Descriptions in search warrants need not be positively specific and definite, but are sufficient if the places and things to be searched are designated in such a manner that the officer making the search may locate them with reasonable certainty.
Hamilton v. State, 556 So.2d 685, 689 (Miss. 1990); Cole v. State, 237 So.2d 443 (Miss. 1970).
As to the validity of the search warrant itself, the Barretts contend that there was never a valid sworn affidavit containing the necessary underlying facts and circumstances to support the warrant. The deputies state in their affidavits that the warrant was obtained after completing affidavits and testifying truthfully before an independent magistrate. Oral testimony can supplement an affidavit for a search warrant. Hester v. State, 463 So.2d 1087, 1089 (Miss. 1985); Prueitt v. State, 261 So.2d 119 (Miss. 1972).
A search warrant may only be issued when the police have demonstrated probable cause by introducing evidence of underlying facts and circumstances before the magistrate granting the warrant. Branch v. State, 347 So.2d 957, 958 (Miss. 1977). Probable cause exists when facts and circumstances within an officer's knowledge, or of which he has reasonable trustworthy information, are sufficient within themselves to justify a man of average caution in the belief that a crime has been committed and that a particular person committed it. Bevill v. State, 556 So.2d 699, 712 (Miss. 1990). The affidavit is the means of presenting to the issuing magistrate a basis upon which he may determine whether in fact probable cause exists. Bevill, 556 So.2d at 712. In reviewing a magistrate's finding of probable cause, this Court does not make a de novo determination of probable cause, but only determines if there was a substantial basis for the magistrate's determination of probable cause. Smith v. State, 504 So.2d 1194, 1196 (Miss. 1987).
The Barretts at no time presented detailed, precise facts to support the contention that there was not an initial affidavit of underlying facts and circumstances. Their affidavits in opposition to the motion for summary judgment were mere denials of the assertion that there was an affidavit. The Barretts establish no specific facts to show that the magistrates did not have a substantial basis for issuing the warrant.
The finding that the search warrant was legal and valid is affirmed.

C.

IS THERE RESPONDEAT SUPERIOR AND VICARIOUS LIABILITY?
The basis of the action against Sheriff Miller is that the deputies were his agents and servants and acting in the scope of their authority and in furtherance of the business of Sheriff Miller. The sheriff was not present nor was he involved in the execution of the search warrant. Any liability he may have would have to come vicariously or through respondeat superior.
Under Miss. Code Ann. § 19-25-19 (Supp. 1991) Sheriff Miller may be held liable for damages. This state statute provides, inter alia, that a sheriff shall be liable for the acts of his deputies. It goes without saying that the sheriff can be held liable only if the deputies have done something wrong.

D.

IS THERE OFFICIAL AND GOOD FAITH IMMUNITY?
Officers and agents of the State of Mississippi are clothed with defenses not *567 available to ordinary citizens. When such an individual is named as a defendant in a civil action our law directs that they enjoy qualified public official immunity. An official has
no immunity to a civil action for damages if his breach of a legal duty causes injury and (1) that duty is ministerial in nature, or (2) that duty involves the use of discretion and the governmental actor greatly or substantially exceeds his authority and in the course thereof causes harm, or (3) the governmental actor commits an intentional tort. Beyond that, a government official has no immunity when sued upon a tort that has nothing to do with his official position or decision-making function and has been committed outside the course and scope of his office.
McFadden, 542 So.2d at 877; Starnes v. Vardaman, 580 So.2d 733, 737 (Miss. 1990); Region VII, Mental Health v. Isaac, 523 So.2d 1013, 1016 (Miss. 1988) (immunity extended unless performing merely a ministerial function); Grantham v. Department of Corrections, 522 So.2d 219, 224 (Miss. 1988).
The "ministerial/discretionary" distinction remains intact in this State. McFadden, 542 So.2d at 877. Qualified public official immunity is not absolute immunity. The immunity is limited and applies only when the official is engaged in a discretionary decision-making role. It does not apply if the action is merely ministerial. Davis v. Little, 362 So.2d 642, 644 (Miss. 1978). While there is no flexible rule to distinguish whether an act is ministerial or discretionary, the most important criteria is if the duty is one which has been positively imposed by law and in a manner or upon conditions which are specifically designated, the duty to perform under the condition specified, not being dependent upon the officer's judgment or discretion, the act and discharge thereof is ministerial. McFadden, 542 So.2d at 877; Region VII, Mental Health v. Isaac, 523 So.2d at 1017; Poyner v. Gilmore, 171 Miss. 859, 158 So. 922 (1935).
Here the deputies were not exercising discretionary authority in searching the Barretts' home. The deputies were acting under a search warrant which gave them the authority to search and set out the parameters in which the search should be carried out. Both federal and state law protects individuals from unreasonable searches. In carrying out the search warrant the deputies were performing a ministerial function. The discretionary function, determining the probable cause for the issuance of the warrant, had already occurred. The execution of the search warrant was a ministerial act and required no discretionary decision-making, aside from the places in the house to search, on the part of the deputies executing the warrant. As the execution of the search warrant was a ministerial act, the deputies who executed it are not shielded from liability by qualified immunity.
The deputies argue that qualified or good faith immunity can only be abrogated upon a showing of a lack of good faith belief that the conduct was lawful; that the conduct violated a clearly established statutory or constitutional right of which a reasonable person would have known; or that wilful wrongs or malicious acts were committed. Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); Barker v. Norman, 651 F.2d 1107 (5th Cir.1981); Grantham v. Department of Corrections, 522 So.2d at 225, citing Hudson v. Rausa, 462 So.2d 689 (Miss. 1984). However, this argument made by the deputies puts the cart before the horse, as it assumes that the deputies were already clothed in qualified immunity. They were not. The action they took was not discretionary but ministerial and immunity did not extend to them.

III. THE SUMMARY JUDGMENT AND DISMISSAL
Absent a § 1983 claim, summary judgment and the motion to dismiss must be based upon state law grounds. Each of the defendants entered their own separate motions; however, some of them stated similar arguments for the motions. Their motions *568 are grouped according to their similarity.

A. The Deputies Who Obtained the Search Warrant
Deputies Joel Walters and David Franklin argue they are clothed in immunity; that the Barretts' challenge to the validity of the warrant was not supported by law; and that there was no connection between them and the damages that the Barretts allege.
Walters and Franklin did present an affidavit of underlying facts and circumstances to a neutral magistrate and offered oral testimony to establish probable cause for the warrant. Our law does not require that the affidavit be attached to the warrant nor is it necessary to have Mrs. Barrett named in the warrant. The Barretts state no other evidence to establish a question of fact as to the validity of the warrant. The Barretts also failed to establish any connection between Walters and Franklin and the alleged damage to their property.
Furthermore the action of the deputies in obtaining the search warrant was discretionary and not ministerial.
As a matter of law these two deputies had qualified immunity and there exists no genuine issues of material fact as to their liability for the alleged damage to the Barretts' home. It is clear beyond a reasonable doubt that the Barretts can prove no set of facts to establish a claim for relief against Walters and Franklin. Summary judgment and the dismissal were properly entered in favor of them.

B. The Deputies Executing the Search Warrant
Deputies Chris Robinson and C.M. Vincent executed the search warrant along with Chuck Fowler and Everett Moseley, who were not named as defendants in the suit. Robinson and Vincent contend in their motions and affidavits that they too were clothed with immunity, that they conducted the search in good faith, and that they did not cause any uncivil behavior toward the Barretts.
These two deputies are not immune from suit under qualified or good faith immunity because they were engaged in a ministerial function. These officers were obligated to search the house in a manner to locate the items indicated in the warrant.
They contend in their affidavits that they did search the house according to their training and education and did not destroy or damage any of the property of the Barretts. They did confiscate two boxes of rubber gloves as they believed that these were evidence. Having already considered the counter affidavits of the Barretts, we consider all affidavits in the light most favorable to the Barretts and giving them the benefit of every reasonable doubt, there is a genuine issue of fact existing as to whether the deputies caused compensable damage to the Barretts. It does not appear beyond a reasonable doubt that the Barretts can prove no set of facts upon which they would be entitled to relief.
Summary judgment and dismissal was improper as to Deputies Robinson and Vincent.

C. Sheriff Tom Miller
Sheriff Miller contends that he was cloaked in immunity and was not involved in the search of the Barretts' home. Notwithstanding, Sheriff Miller is made liable for the actions of his deputies through Miss. Code Ann. § 19-25-19, which provides vicarious and respondeat superior liability to a sheriff for the actions of his deputies. Sheriff Miller has no liability for his own actions, but would be liable for the actions of his deputies if the deputies themselves are found to be liable.
Summary judgment and dismissal as to Sheriff Miller was improper.

D. Continental Insurance Company
Continental, as the surety of the deputies and Sheriff Miller, is liable to the extent that the deputies and Sheriff Miller are found liable. Summary judgment and dismissal were therefore improperly granted in favor of Continental Insurance Company.
The judgment of the lower court is affirmed as to the summary judgment and *569 dismissal of the action against Deputies David Franklin and Joel Walters. In all other particulars, the judgment of the lower court is reversed and remanded for further proceedings not inconsistent with this opinion.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, PITTMAN, BANKS and McRAE, JJ., concur.
NOTES
[1] The Second Circuit Court of Appeals seems to have been first to apply a "substantive due process" standard in excessive-force cases. See Johnson v. Glick, 481 F.2d 1028, 1032-33 (2d Cir), cert. denied, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). Under this standard, decisionmakers have been required to consider such issues as the officer's subjective motivation or the extent of the plaintiff's injury. Id. at 1033 (asking whether the officer used force "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm"). But see Lester v. City of Chicago, 830 F.2d 706, 713 (7th Cir.1987) (rejecting "substantive due process" standard as irrelevant to disposition of excessive-force issue); see also Freyermuth, Rethinking Excessive Force, 1987 DUKE L.J. 692 (prophetic critical analysis of misapplication of "substantive due process" standard to excessive-force claims).
[2] See, e.g., Hinshaw v. Doffer, 785 F.2d 1260 (5th Cir.1986) (applying "substantive due process"); Shillingford v. Holmes, 634 F.2d 263 (5th Cir.1981) (same). Cf. Hudson v. McMillian, 503 U.S. ___, ___-___, 112 S.Ct. 995, 999-1002, 117 L.Ed.2d 156, 166-69 (1992) (reversing decision by Fifth Circuit Court of Appeals which required proof of "significant injury" in Eighth Amendment excessive-force cases).