CARLTON, J.,
for the Court:
¶ 1. On March 7, 2013, a Harrison County jury convicted Ruben Orlando Benitez of murder. The Harrison County Circuit Court sentenced Benitez to life in the custody of the Mississippi Department of Corrections (MDOC). Benitez now appeals his conviction and sentence.
FACTS
¶ 2. On the morning of September 18, 2011, Sergeant Joey Fore with the D’Iber-ville, Mississippi Police Department and Transportation Security Administration (TSA) representative Jonathan Rhodes performed a welfare check at the apartment of Stacey Wright. Wright was employed by TSA at the Gulfport Biloxi Regional Airport and had failed to report to work that day. Sergeant Fore and Rhodes were accompanied by Steve Ramsey, the courtesy officer for Wright’s apartment complex. Upon arriving to Wright’s apartment in D’Iberville, Sergeant Fore found that the door was unlocked. Upon entering, Sergeant Fore saw Wright’s lifeless body in the hallway. Sergeant Fore observed that Wright had a wound on her left chest and dried blood on her shirt.
¶ 3. Later that afternoon, Detective Marty Griffin of the D’Iberville Police Department spoke to Kent Banks, the law enforcement liaison for TSA, and Benitez, the assistant federal security director for TSA and also Wright’s boss, regarding Wright’s death. During this conversation, Detective Griffin learned that Wright had been involved in a romantic relationship with another TSA employee and that the two had been together on the day of Wright’s murder. Detective Griffin then drove to Jackson, Mississippi, to meet with Banks and Benitez in order to follow up on the investigation.
¶ 4. Detective Griffin met Banks and Benitez at the Jackson Police Department (JPD). Detective Griffin testified that upon meeting Benitez, he noticed that Benitez had a Band-Aid on his right-hand pinky finger. When asked about the injury, Benitez responded that he cut his finger washing his car. Detective Griffin found the cut on Benitez’s finger to be significant, since Wright had been stabbed to death. While at the police department, Benitez was advised of, and then waived, his Miranda rights. During the initial questioning by Detective Griffin, Benitez denied any relationship with Wright and denied that he was in D’Iberville on the day of her murder. However, Benitez eventually confessed that he and Wright were having an affair and that he had been in D’Iberville on the day of the murder. JPD officers obtained biological samples from Benitez, which Detective Griffin took possession of and delivered to the D’Iber-ville Police Department. Benitez made no confession regarding Wright’s murder, and the officers told Benitez that he was free to leave at the conclusion of the questioning.
¶ 5. Search warrants for Benitez’s home in Pearl, Mississippi, his personal vehicle, and his government vehicle were executed. During the search, officers discovered blood in the cabin of Benitez’s personal vehicle, and a bloody pair of men’s shoes in the trunk. Law enforcement officers then traveled to the Jackson airport to search Benitez’s government vehicle.
¶ 6. On the evening of September 19, 2011, assistant special agents for the Office of the Inspector General[1] Terry Crump *137 and Donald Bratton arrived at the Jackson-Evers International Airport in Jackson, Mississippi, to assist local law enforcement with the search of the TSA vehicle. Upon arriving at the airport, Special Agent Crump was advised that Benitez was inside the airport waiting on his wife’s flight .to arrive. Special Agent Crump entered the airport and approached Benitez. He informed Benitez that he was not under arrest, but that he would like to speak to Benitez about Wright’s death.
¶ 7. Benitez agreed to speak to Special Agent Crump, but requested that he be allowed to talk to his wife first, who was flying in from Chicago. However, due to bad weather, Mrs. Benitez’s flight was delayed until the next morning. After Beni-tez called his wife, he went to a public area at the airport to talk with Special Agent Crump and another agent, Donald Brat-ton.
¶ 8. Special Agent Crump gave Benitez a “rights advisement for employees” form[2] to read and sign. Benitez signed the form. Special Agent Crump then asked Benitez if he had any involvement or knowledge regarding the murder of Wright. Special Agent Crump informed Benitez that blood stains had been found in Benitez’s car. Benitez then admitted to stabbing Wright.
¶ 9. Benitez informed the agents that it was difficult to discuss the events surrounding Wright’s death, and that he would prefer to write about it. He walked over to another small table and prepared a written statement describing in detail the evening of Wright’s death. Benitez then returned to the agents. Special Agent Crump swore Benitez to the statement. Benitez also drew a diagram of Wright’s apartment, the scene of the murder.
¶ 10. Shortly after, Officer Joel Wallace, a detective from the Mississippi Bureau of Investigation, arrived at the airport. Officer Wallace advised Benitez of his rights, and proceeded to interview him. At trial, Officer Wallace testified that Ben-itez told him that he was in fact having an extramarital affair with Wright, and that prior to the incident, he and Wright were eating at the Island View Casino. Benitez and Wright were both married to other people, but Wright was separated from her husband. During the meal, Benitez and Wright began discussing their marriage relationships, and the conversation continued after they left the casino and arrived at Wright’s apartment. Officer Wallace testified that Benitez admitted to stabbing Wright at her apartment that night, then gathering his clothing, getting into his car, and driving back to Jackson on Highway 49. Benitez stated that he dropped off his clothing along the way.
¶ 11. Benitez was arrested on September 19, 2011, and subsequently indicted for one count of murder pursuant to Mississippi Code Annotated 97—3—19(1)(a). Benitez pled not guilty on December 10, 2012.
¶ 12. At trial, Benitez testified that he worked for TSA and that his job responsibilities included keeping the state of Mississippi up to code with the latest policies sent from Washington, D.C. Benitez also testified that he and Wright were romantic companions, and that he provided her with financial support. Benitez stated that on September 17, 2011, he woke up at Wright’s apartment in D’Iberville. Wright went to work, but Benitez stayed at the apartment and cleaned it, and had a bath ready for Wright when she came home from work, since she had been complaining about her fibromyalgia. After the bath, Benitez gave Wright a massage. They then went to the grocery store together and returned to the apartment to watch *138 movies. Later, they left the apartment and went to the Island View Casino. At the casino, they ate and had alcoholic beverages.
¶ 13. Benitez testified that they left the casino, and when they got into the vehicle, they began to argue about their relationship. Benitez stated that Wright asked him for more financial support, and threatened to tell his supervisor about their relationship, which is against TSA policy, if he failed to cooperate. Benitez stated that Wright continued to threaten him all the way back to her apartment. Once inside, Benitez testified that he saw Wright raise up her hand, which had something in it. He stated that she compared Benitez to her husband, which caused Benitez to go into an uncontrollable rage. He testified that at during this rage, he lost control and stabbed Wright multiple times. He then grabbed his belongings and left the apartment.
¶ 14. Wright’s daughter, Bria, testified that on the night of September 17, 2011, she received a phone call from her mother. The phone rang only once, and when Bria answered it, she did not hear anything on the other line. Bria immediately called her mother back. Bria testified that her mother answered the phone, and Bria could hear her mother yelling: “[D]on’t you see my daughter [is] calling me?” Bria then heard a man’s voice tell her mother to shut up and keep driving, and then the phone hung up. Bria testified that the man’s voice sounded agitated. Bria tried calling Wright back again, because Wright’s tone sounded upset, but the phone went straight to voicemail. Bria then called her father and her two aunts to relate what had happened. Bria testified that she continued calling her mother at least twenty times that night and never got a response, even after leaving numerous texts and voicemails. She grew concerned and contacted the D’Iberville Police Department. Bria testified that the next morning, she and her father drove down to Wright’s apartment in D’Iberville, where she learned of Wright’s death.
¶ 15. The jury also heard testimony from Special Agent Crump; Officer Wallace; D’Iberville Police Officers Lee Donald and Mike Manna; Sergeant Fore; Detective Griffin; Stacy Smith Jones, a forensic scientist for the Mississippi Bureau of Investigations; Joseph Heflin, a forensic biologist for the Mississippi Crime lab; Dr. Paul McGarry, a pathologist; Kent Banks; and Mary Ann Beni-tez, Benitez’s wife. At the conclusion of the trial, the trial court provided the jury with instructions on murder as well as heat-of-passion manslaughter, and the elements of both.
¶ 16. After the trial, the jury returned a verdict finding Benitez guilty of murder. The trial judge then sentenced Benitez to a term of life in the custody of the MDOC. Benitez filed a motion for a new trial, or, in the alternative, a judgment notwithstanding the verdict (JNOV)- The trial court denied the motion on March 19, 2013. This appeal followed.
¶ 17. On appeal, Benitez makes the following assertions: (1) the evidence supports a conviction for manslaughter rather than murder; (2) the trial court erred in not suppressing Benitez’s illegal statement given to TSA investigators because Beni-tez was not made aware of his right to counsel; and (3) the trial court erred by not suppressing evidence seized in the search of Benitez’s apartment and automobile, because the underlying facts and circumstances attached to the search warrants failed to satisfactorily show probable cause.
STANDARD OF REVIEW
¶ 18. We review challenges to the sufficiency of the evidence by viewing the *139 evidence in the light most favorable to the State. Ellis v. State, 778 So.2d 114, 117 (¶ 7) (Miss.2000). “[T]he critical inquiry is whether the evidence shows ‘beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed.’ ” Brown v. State, 48 So.3d 614, 616 (¶ 6) (Miss.Ct.App.2010) (quoting Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005)).
¶ 19. We review a trial court’s decision to admit or suppress evidence by assessing whether substantial credible evidence existed to support the trial court’s findings. Culp v. State, 933 So.2d 264, 274 (¶ 26) (Miss.2005). We will only reverse a trial court’s admission of evidence upon a finding that the trial court abused its discretion. Id.
DISCUSSION
I. Sufficiency of the Evidence
¶20. Benitez argues that the evidence presented at trial supports a manslaughter conviction rather than a murder conviction. Benitez claims that the State failed to prove that he did not act out of the heat of passion, and he argues that based on the evidence presented at trial, no reasonable juror could find beyond a reasonable doubt that he was not in fact acting out of heat of passion.
¶ 21. As stated, when reviewing challenges to the sufficiency of the evidence, we must view the evidence in the light most favorable to the State. Ellis, 778 So.2d at 117 (¶ 7). If “any rational trier of fact could have found, beyond a reasonable doubt, that the essential elements of the crime existed, this Court will affirm the conviction.” Brown, 48 So.3d at 616 (¶ 6) (quoting Bush, 895 So.2d at 843 (¶ 16)). “If we find that reasonable, fair-minded jurors could have concluded that the defendant was guilty of the accused crime, the evidence will be deemed sufficient.” Id.
¶ 22. Mississippi Code Annotated section 97-3-19(1)(a) (Rev.2006)[3] defines murder as “The killing óf a human being without the authority of law by any means or in any manner ... [w]hen done with deliberate design to effect the death of the person killed, or oq any human being[.]”
¶ 23. Heat-of-passion manslaughter is defined as: “The killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense[.]” Miss.Code Ann. § 97-3-35 (Rev. 2006). The Mississippi Supreme Court has defined “heat of passion” as:
[A] state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce a homicide from the grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror.
Mullins v. State, 493 So.2d 971, 974 (Miss.1986) (citing Black’s Law Dictionary, 650 (5th ed.1979)).
¶24. Benitez asserts that during his argument with Wright on the night of her murder, she threatened to call his boss and disclose their relationship, which was against TSA rules, which meant Benitez would lose his job. He stated that Wright *140 also compared Benitez to her husband, whom Benitez despised. Benitez claims that this comparison caused him to become “uncontrollably enraged.” He testified that the moment she said this insult, she put her hand up in the air with what looked like a sharp object, and came towards Benitez. Benitez explains that it was in this moment that he picked up the knife and stabbed Wright.
¶ 25. The record reflects that the trial court instructed the jury on the elements of both murder and heat-of-passion manslaughter. The trial court further instructed the jury that “mere words, no matter how provocative, are insufficient to reduce an intentional and unjustifiable homicide from murder to manslaughter.” Benitez testified relating the facts surrounding Wright’s death. Benitez admitted to stabbing Wright multiple times, then leaving her apartment and driving to Jackson. The pathologist testified that Wright had been stabbed in the chest eleven times. The jury also heard Benitez’s testimony claiming that he thought he saw a sharp object in Wright’s hand prior to stabbing her, and that at the time of the incident he was in an uncontrollable rage stemming from an argument between him and Wright. “The determination of witness credibility lies within the sole province of the jury.” Leggett v. State, 54 So.3d 317, 321 (¶ 22) (Miss.CtApp.2011) (citation omitted). We do “not disturb a jury’s finding on conflicting testimony where there is substantial evidence to support the verdict.” Id.
¶ 26. As stated, the trial court instructed the jury on the elements of murder and heat-of-passion manslaughter. After being so instructed, the jury chose to convict Benitez on the murder charge. After examining the evidence in the light most favorable to the State, we find that the record contains sufficient evidence from which a rational juror could find Benitez guilty of murder beyond a reasonable doubt. See Miss.Code Ann. § 97-3-19(1)(a). The trial court did not abuse its discretion when it denied Benitez’s post-trial motion. See Brown, 48 So.3d at 616 (¶ 6).
II. Suppression of Statement
¶ 27. Benitez next argues that the trial court erred in refusing to suppress his statement given to TSA investigators, Special Agents Crump and Bratton, because, he alleges, he was not made aware of his right to counsel. Benitez testified that when Special Agents Crump and Bratton approached him at the Jackson airport on September 19, 2011, he felt that he was in a custodial interrogation, and Benitez claims he did not feel as if he was free to go. He asserts that he was not given a Miranda warning and was not made aware of his right to counsel before giving his statement to Special Agents Crump and Bratton. Benitez argues that his statement was taken in violation of his Fifth and Fourteenth Amendment rights, and as a result, he claims his statement was illegal.
 ¶ 28. Alternatively, the State argues that the record clearly shows that Benitez was not in custody at the time he gave the voluntary statement to Special Agent Crump. Regarding our review of the admission of a pretrial statement into evidence, the Mississippi Supreme Court has established:
When reviewing a trial court’s ruling on the admission or suppression of evidence, this Court must assess whether there was substantial credible evidence to support the trial court’s findings. The admission of evidence lies within the discretion of the trial court and will be reversed only if that discretion is abused.
*141 Culp, 933 So.2d at 274 (¶ 26). Miranda warnings are a prerequisite to the admissibility of a defendant’s statement at trial only when that statement is made during custodial interrogation. Tolbert v. State, 511 So.2d 1368, 1375 (Miss.1987). The test for whether a person is in custody for Miranda purposes “is whether a reasonable person would feel he was in custody[, which] depends upon the totality of the circumstances.” Hopkins v. State, 799 So.2d 874, 878 (¶ 7) (Miss.2001). The supreme court has also provided factors to consider in determining whether a person is in custody, including: “[T]he place and time of the interrogation, the people present, the amount of force or physical restraint used by the officers, the length and form of the questions, whether the defendant comes to the authorities voluntarily, and what the defendant is told about the situation.” Id. Significant to this case, the supreme court has held that “[t]he key to determining if the questioning of a person is a custodial interrogation within the meaning of Miranda is whether the defendant is deprived of his freedom of action in any significant manner and whether he is aware of such restraint.” Id. (quoting Roberts v. State, 301 So.2d 859, 863 (Miss.1974)).
¶ 29. When making his ruling denying the motion to suppress Benitez’s statement to Agents Crump and Bratton, the trial judge observed that Benitez possessed an education level of at least two years in college, and that Benitez was employed in upper management. The trial judge also found that “[t]he record is replete that the subject interview took place ... in an open[,] public mezzanine area. I think it’s fair to say it was an open and public location.”
¶ 30. The trial judge noted that Agent Crump used a Garrity[4], form to advise Benitez of his rights. Agent Crump provided testimony explaining that a Garrity form constitutes a standard form the Department of Homeland Security uses to advise a federal employee of his rights during a criminal-investigation interview. Agent Crump clarified that a Garrity form is used by the Department of Homeland Security to advise an individual who is not in custody of his rights; the department uses another form to advise individuals of their Miranda rights when they are taken into custody. Agent Crump testified that while at the airport, he advised Benitez two times that he was not in custody. Agent Crump also testified that he went over the Garrity form with Benitez. Based on Agent Crump’s testimony regarding the Garrity form, the trial judge found that Agent Crump opted to use the Garrity form because Benitez was not in custody. The trial judge then explained “that [the] Sixth Amendment right to counsel attaches upon the subject or suspect being in custody. The court is taking in to consideration the fact that [Benitez] was advised of his Miranda warnings two days prior to the subject interview giving rise to the motion [to suppress the statement].” The trial court further observed that testimony reflected that Benitez’s statement to Agents Crump and Bratton “was not derived through any promises, threats or inducements^] there is no indication of force, duress, coercion, or promises.”
¶ 31. Upon our review, we find that the record contains substantial credible evidence in support of the trial judge’s denial of the motion to suppress Benitez’s statement to Agents Crump and Bratton. See Culp, 933 So.2d at 274 (¶ 26). Substantial evidence in the record supports the trial court’s determination that the statements by Benitez were freely and voluntarily giv *142 en, and that Benitez was not in custody at the Jackson airport when he gave these statements. Accordingly, we find no abuse of discretion by the trial court’s admission of Benitez’s statement into evidence.
III. Suppression of Search
¶ 32. Benitez also argues that the trial court erred by not suppressing the search of his apartment and automobile. Benitez explains that the underlying facts and circumstances attached to the search warrants failed to satisfactorily show the probable cause required.
¶ 33. Benitez specifically asserts that the affidavit for the search warrants lists his property, describes his car, and gives his address, but fails to mention his name and the probable cause connecting him to the crime. Benitez claims that the failure to include his name or the probable cause is a violation of Article 3, Section 23 of the Mississippi Constitution.
¶ 34. Benitez cites to the hearing on the motion to suppress the search of his apartment and automobile, where Officer Wallace testified that the justice court judge did not read the underlying facts and circumstances in the affidavit, only what was stated orally. The State, however, argues that Officer Wallace’s oral supplementation presented to the judge who issued the search warrants did indeed provide the probable cause necessary for the issuance of the search warrants.
¶ 35. “A search warrant may only be issued when the police have demonstrated probable cause by introducing evidence of underlying facts and circumstances before the magistrate granting the warrant.” Barrett v. Miller, 599 So.2d 559, 566 (Miss.1992). The supreme court has explained that “[pjrobable cause exists when facts and circumstances within an officer’s knowledge, or of which he has reasonably trustworthy information, are sufficient within themselves to justify a man of average caution in the belief that a crime has been committed and that a particular person committed it.” Id. The supreme court has held that where
the underlying facts stated in an affidavit for search warrant, considered alone, may not be sufficient to confer probable cause, oral testimony adduced before the issuing magistrate, when taken together with the affidavit, may sufficiently establish probable cause for issuance of a search warrant under the “totality of the circumstances” test.
Petti v. State, 666 So.2d 754, 758 (Miss.1995); see also Roberson v. State, 595 So.2d 1310, 1317 (Miss.1992); Hickson v. State, 512 So.2d 1, 3 (Miss.1987); Lockett v. State, 517 So.2d 1317, 1324 (Miss.1987).
¶ 36. Upon review of a judge’s finding of probable cause, this Court determines if a substantial basis existed for the judge’s determination of probable cause. Barrett, 599 So.2d at 566. When conducting this review, we must look “to both the facts and circumstances set forth in the affidavit for [the] search warrant and ... the sworn oral testimony presented to the issuing magistrate.” Petti, 666 So.2d at 758 (quoting Williams v. State, 583 So.2d 620, 622 (Miss.1991)).
¶ 37. The record reveals that Officer Wallace testified at the suppression hearing that when he arrived to the justice court judge’s residence, the justice court judge placed him under oath. Officer Wallace provided the justice court judge with a copy of the search warrants, as well as documents providing information as to Benitez’s apartment and his personal and government vehicles. Officer Wallace stated he also provided the judge the affidavit for the search warrants, with the typed underlying facts and circumstances. Officer Wallace testified that he watched the judge review these documents. Once under oath, Officer Wallace proceeded to orally advise the judge of the relevant *143 facts and circumstances. Officer Wallace informed the justice court judge of Wright’s murder in D’Iberville and explained that Benitez, with whom Wright had an intimate relationship, was a suspect in the murder. Officer Wallace stated that Benitez lived in Rankin County, and Beni-tez admitted that he had visited Wright at her apartment on the day of the murder, and that he had driven his vehicle to and from her apartment. Officer Wallace explained that Benitez possessed both a government vehicle and a personal vehicle. Officer Wallace also informed the justice court judge that Benitez had a cut on his finger, which was significant because Wright had been stabbed to death. The record shows that the justice court judge possessed the affidavit for the search warrants that included the underlying facts and circumstances, as well as Officer Wallace’s oral statements, to support his finding of probable cause.
¶ 38. After hearing Officer Wallace’s testimony, as well as arguments from Ben-itez and the State, the trial judge denied the motion to suppress the evidence seized from the search of Benitez’s automobile and apartment, finding probable cause indeed existed to issue the search warrants. The trial judge explained:
[After] [considering the totality of the circumstances, this court find that the warrant was issued by a detached and neutral magistrate. The description of what was sought was specific to a reasonable certainty. The affidavit adequately described the area to be searched with sufficient [particularity], [and] the variance between the underlying facts and circumstances and the affidavit, the search warrant, and [Officer Wallace’s] supplement was not a material variance as to render the search warrant illegal.
¶ 39. On appeal, our review of the record also shows substantial evidence supporting the justice court and trial court’s determination that probable cause existed to issue the search warrants for Benitez’s vehicles and apartment. Accordingly, we find no abuse of discretion in the denial of Benitez’s motion to suppress the evidence from the search. See Cooper v. State, 93 So.3d 898, 900 (¶ 6) (Miss.Ct.App.2012) (appellate courts review a judge’s issuance of a warrant for whether the judge possessed a substantial basis for concluding that probable cause existed).
¶ 40. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, MAXWELL AND FAIR, JJ„ CONCUR. JAMES, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.

. The Office of the Inspector General is an agency inside the Department of Homeland Security.

. Both appellate briefs explain that this form is given to employees who are not in custody.

. We recognize that the Legislature recently amended section 97-3-19(1)(a) in 2013 to classify deliberate-design murder as first-degree murder.

. Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967).